## DOMENICK TREMP

*vs.*

## BOARD OF PUBLIC SAFETY OF CITY OF TORRINGTON

Court of Common Pleas    Litchfield County    File No. 7950

MEMORANDUM FILED AUGUST 3, 1944.

*Charles P. Roraback,* of Torrington, for the Plaintiff.

*Harry Ossen,* of Torrington, for the Defendant.

FITZGERALD, J.    On June 20, 1944, the court overruled the demurrer of the defendants* who are five in number, namely, the mayor and members of the Board of Public Safety of the City of Torrington, hereafter referred to as the defendant board.    Thereafter pleadings were closed and the case was

* Memorandum reported *ante,* p. 70.

tried on July 6th. Counsel have filed carefully considered briefs and the court is now in a position to pass upon the questions presented.

Plaintiff in this action is seeking to enjoin defendant board in three respects: (1) from transferring him from the detective bureau of the City of Torrington to one of the shifts for regular police work in that city; (2) from abolishing his alleged office of detective lieutenant; (3) from reducing his rank by way of demotion in a manner contrary to the provisions of the city charter.

The court's earlier memorandum on demurrer states the reasons why plaintiff in this action has resorted to equity rather than pursue some other remedy. Even after a trial on the merits defendant board has asked the court to reconsider its earlier ruling on the demurrer to plaintiff's complaint. The court declines to do so. In short, the court is of the opinion that plaintiff would be entitled to injunctive relief providing the complained action of defendant board on May 2, 1944, amounted to abolishing the office of detective lieutenant during plaintiff's incumbency thereof or the board's action amounted to a reduction in rank and demotion of plaintiff, there having been admittedly no "cause found after hearing on charges made in writing." See Special Laws of 1935, de "An Act Providing For A Board of Public Safety For The City Of Torrington", No. 337, pp. 196-197, §5.

Certain facts not in dispute bear recital. In August, 1927, after some experience as a member of the State police, plaintiff became a member of the police force of the City of Torrington. It was in 1923 that Torrington received its charter from the General Assembly as a municipal corporation (Special Laws of 1923, No. 374, pp. 462-489, comprising 101 sections) and sections 90-95 thereof relate to the organization and function of the police department. Section 91 of the charter, so far as is material to the case, reads: "The mayor, with the advice and consent of the board of councilmen, shall have authority to make appointments and promotions of all officers, and to establish a detective bureau, under such rules and regulations as it may adopt for the purpose. All appointments and promotions in the police department shall be made by a vote of a majority ....and such appointees shall hold office until removed for cause."

It was not until 1934 that the detective bureau was in fact established and plaintiff, then a police sergeant, was "assigned for duty therein." The vote of the board of councilmen establishing the detective bureau (November 9, 1934) and plaintiff's assignment to duty therein, reads, so far as is material: "....that a detective bureau be, and it is hereby established, within the Police Department and Captain Nicola Calabrese and Sergeant Domenick Tremp are assigned for duty therein."

The creation of defendant board in 1935 (Special Laws, 1935, *supra*) repeals by implication, if not otherwise, the duties and function of the board of councilmen respecting the control, management and supervision of the police and fire departments. Compare original charter, sections 91, 92, 94, 97, as contained in Special Laws of 1923. Hence the establishment of the detective bureau in 1934 and plaintiff's first assignment for duty therein came through the channel of the then board of councilmen, predecessor of defendant board.

On August 28, 1939, the then members of defendant board voted to promote plaintiff to lieutenant. The vote makes no reference to his specific duties or to any particular branch of the police department in which he is to serve on assignment or otherwise. However, since the establishmnt of the detective bureau in 1934 plaintiff has been performing active, conscientious and efficient work therein, first. as sergeant and then as lieutenant. At all times he has met the exactions of his office with credit to himself, to the bureau, and to the police department as a whole. This was the situation on May 2, 1944, when defendant board by its vote ordered plaintiff's transfer "from the detective bureau to one of the regular shifts for regular police work as lieutenant."

The first knowledge plaintiff had of the board's action was in a newspaper item on the following day. No charges, written or oral, had been preferred against plaintiff; and no hearing was held and "cause found" in the mandate appearing in section 5 of the 1935 Act (Special Laws, 1935, *supra*). It is upon these omissions that plaintiff predicates his claims for relief and upon which aspects of the case he scores heavily in a moral sense.

Since the establishment of the detective bureau in 1934 only two men have done the work therein, namely, plaintiff and Captain Calabrese. The latter died several months ago. The action of defendant board on May 2, 1944, does not effect the

two-man system of the bureau. The voted changes in the bureau are these: (1) the promotion of Lieutenant Sherlock to captain and his assignment to take charge of the bureau; (2) the promotion of patrolman Wall to sergeant and his assignment to the bureau; and (3) the aforesaid transfer of plaintiff "from the bureau to one of the regular shifts for regular police work as lieutenant." It is to be noted that under the proposed new set-up of the detective bureau there is presently to be no officer therein having the title and rank of lieutenant.

A police officer is a public officer (*McDermott vs. New Haven*, 107 Conn. 451, 453) and every member of the police force, irrespective of his title, holds an office (*State ex rel. Hosford vs. Kennedy*, 69 Conn. 220, 224-225). The court cannot find that plaintiff has ever occupied or held a distinct office of "detective lieutenant." The fact that the Chief, as departmental head, gave plaintiff a badge bearing this designation is not enough. Plaintiff's status, commencing with 1934, was first that of a police sergeant assigned to duty in the detective bureau, and since 1939 to recent date that of a police lieutenant so assigned. Since there was never in existence a separate and distinct office created by charter or other manner of legal creation designated "detective lieutenant", such cannot be the subject of abolishment. In short, the vote of defendant board on May 2, 1944, does not affect plaintiff's title and rank of lieutenant but does purport to change the kind of police work he has been engaged in since 1934. His office of police lieutenant remains intact; only his assignment to duty in the detective bureau ends.

So, also, the court cannot find that the action of defendant board on May 2, 1944, amounted to a reduction in rank and demotion of plaintiff. His title and rank of lieutenant remain the same. His compensation remains the same. *McManus vs. Newark*, 49 N.J.L. 175, 6 Atl. 882; compare *Village of Ridgewood vs. Howard*, 13 N.J. Misc. 510, 179 Atl. 461, and cases cited.

There is no question but that the type of police work performed by a dectective is generally considered to be of a higher grade of work than that performed by a police officer in uniform. It is superior in dignity and on the whole requires a greater intellectual effort than is the case of the man in uniform. In the police world a detective lieutenant, for example, occupies a higher plane than does a police lieutenant

drawing the same salary. But the case at bar cannot be governed by these considerations. That plaintiff's pride has been deeply injured is understandable. Nevertheless, the trial court — here as a court of equity — cannot exceed the limitations imposed upon it by tradition. It is not enough for the court to feel that on broad moral grounds the plaintiff has suffered discourteous treatment at the hands of the board.

To go no further, the court feels obliged to rule that it cannot assist plaintiff by way of injunctive relief. As a practical matter, the result herein obtained is the same as would have been the situation had plaintiff in the first instance brought an appeal under the charter to this court rather than to the Superior Court through inadvertence; or delayed for a period of time and then proceeded with a writ of mandamus. No matter what remedy was pursued by plaintiff, the conclusions at the end would be the same, to wit, defendant board, by its vote of May 2, 1944, neither abolished an already legally existing office of detective lieutenant nor removed, reduced and demoted plaintiff. What defendant board did do was to effect a transfer, departmental in nature, affecting neither plaintiff's rank nor compensation. This did not require as a condition precedent the preferring of charges, notice, hearing thereon, and "cause found." Hence plaintiff is left with only a moral claim of abstract injustice, and that alone. Be that as it may, the court is powerless to assist plaintiff in his dilemma.

For reasons stated, judgment must enter for defendant board.